IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CHERYL WITHERS, | ) |
| | ) |
|          **Plaintiff,** | ) |
| | ) |
| v. | )    Civil Action No. 6:16cv34 |
| | ) |
| NANCY A. BERRYHILL[1], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|          **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Cheryl Withers filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433, 1381–1383f. Withers alleges that the Administrative Law Judge ("ALJ") erred by failing to (1) find that Withers had one or more severe impairments; (2) give adequate weight to the opinion of consultative examiner Saeed Jadali, M.D.; and (3) obtain additional evidence. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **DENY** Withers's Motion for Summary Judgment (Dkt. No. 16) and **GRANT** the Commissioner's Motion for Summary Judgment. (Dkt. No. 18).

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Withers failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Withers protectively filed for SSI and DIB on March 19, 2013, claiming disability due to depression, tendonitis, anemia, sleep apnea, and carpal tunnel.[4] R. 102, 219, 278, 263. On October 30, 2015, Withers amended her alleged onset date to March 1, 2014.[5] R. 21, 245. Withers is presently seeking a closed period of disability from March 1, 2014 through December 11, 2015, as she filed a separate claim for benefits under which she was found disabled with an onset of December 12, 2015. Pl.'s Br. at 1, Dkt. No. 17, Ex. A.[6] Pl.'s Br. at 1, Dkt. No. 17, Ex.

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Withers was born on July 25, 1958, and was 57 years old on the date of the hearing before the ALJ, making her a person of advanced age under the Social Security Act. R. 102, 219, 262.

[5] Initially, Withers alleged that her disability began on October 1, 2011. R. 102.

[6] Withers's date last insured was September 30, 2017. R. 21. Thus, she must show that her disability began on or before September 30, 2017 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

2

A. The state agency denied Withers's applications at the initial and reconsideration levels of administrative review. R. 21, 102–12, 113-23, 126–35, 136–145. On November 2, 2015, ALJ William Barto held a hearing to consider Withers claims for DIB and SSI. R. 41–101. Withers was represented by counsel at the hearing, which included testimony from vocational expert James E. Ganoe.[7]

On December 11, 2015, the ALJ entered his decision analyzing Withers's claims under the familiar five-step process[8] and denying her claim for benefits. R. 21–34. The ALJ found that Withers was insured at the time of the alleged disability onset and that she suffered from the medically determinable impairments of carpal tunnel syndrome with right trigger fingers, chronic back pain, sleep-related breathing disorder, cecal diverticulum perforation status post colectomy, vitamin D deficiency, elevated cholesterol, obesity, depression, and anxiety, but that none of these impairments were severe because they did not significantly limit her ability to perform basic work activities. R. 24. Thus, the ALJ concluded that Withers was not disabled, and denied her claim at step two of the sequential evaluation. R. 34. Withers appealed the ALJ's decision and the Appeals Council denied her request for review on May 5, 2016. R. 1–4.

---

[7] Withers is now represented by different counsel, who filed a motion for summary judgment on her behalf.

[8] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). If the Commissioner finds that a claimant is disabled or not disabled at a step, the inquiry ends without proceeding to the next step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

## ANALYSIS

Withers alleges that the ALJ erred by failing to: (1) find that Withers had one or more severe impairments; (2) give adequate weight to the opinion of a Dr. Jadali[9]; and (3) obtain additional evidence, including a psychological examination and x-rays of Withers's lower back and hips.

### A. Relevant Medical History

In April 2014, Withers was hospitalized due to a bowel obstruction that required a colectomy. R. 467–93. In June 2014, she complained of excess bowel movements, and at the hearing Withers testified that she suffers from frequent and urgent bowel movements. R. 70–72, 564. A colonoscopy in November 2014 showed mild acute and chronic inflammation and tubular adenoma. R. 733. Withers complained of epigastric (abdominal) pain in March 2015, but had no blood and "okay" bowel movements. R. 570. In July 2015, she presented to the hospital with rectal bleeding and was advised to follow up with her gastroenterologist. R. 587–94. At the hearing she complained of excess bowel movements, however, there are no further records of treatment for bowel obstruction.

Regarding her carpal tunnel and trigger finger, Withers complained of tingling in her hands in January 2013 during an office visit at the Free Clinic of Central Virginia. R. 681. In January 2014, Withers complained of worsening right hand pain, and indicated that medication and using a brace at night helps. R. 558, 562. In March 2014, Withers presented for a follow-up for her trigger finger, and reported excellent pain relief from her cortisone shot, but continuing weakness. R. 563. She had no digit locking and negative Tinel's signs, and was diagnosed with

---

[9] Withers also argues that the ALJ erred by not finding that Withers was limited to light work, and thus was disabled as a matter of law under the applicable grid rule.

4

resolving trigger finger. Id. In July and August 2014, she again complained of trigger finger in a visit to the Free Clinic of Central Virginia. 575, 661, 662.

Withers was diagnosed with mild obstructive sleep apnea in May 2013, and the doctor noted that "this degree of sleep disordered breathing is of unclear clinical significance. If felt to be contributing to patient symptomology, therapeutic considerations include CPAP, weight loss, intraoral devices and upper airway surgery." R. 398.

Regarding her psychological health, Withers had been diagnosed with depression prior to her alleged onset date of March 1, 2014. R. 683, 558. In January 2014, Withers complained of getting "very emotional about things" during her visit to the Free Clinic of Central Virginia. R. 558. In June 2014, she was placed on a trial of Trazadone for depression; in August 2014, the notes indicate a diagnosis of chronic depression and anxiety, instruct her to continue the Trazadone, while noting that she was not taking it regularly, and increase her Paxil dosage. R. 659, 686.

Regarding her back pain, in July 2014, Withers complained of muscle spasms in her back which were helped by medication, and was diagnosed with mild sciatica in August 2015. R. 565, 576.

In September 2013, Dr. Jadali performed a consultative examination. R. 439–43. Physical examination findings were normal, including normal extremities, normal joints, and normal range of motion. R. 443. Dr. Jadali diagnosed Withers with carpal tunnel syndrome in her right hand and depression. Id. He limited her to light work, and being able to reach, handle, feel, grasp, and finger frequently, and being able to stoop, crouch, and squat frequently. Id.

In October 2013 and July 2014 state agency psychological consultants Sreeja Kadakkal, M.D. and Jo McClain, Psy.D., performed a records review and found that Withers mental

impairments caused mild restriction of activities of daily living, no difficulties in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation of extended duration. R. 107, 133. The state agency doctors found that Withers had no severe mental impairment.

In July 2014, state agency physician R.S. Kadian, M.D. reviewed the updated record and found that Withers had no severe impairments. R. 132.

### B. Finding of No Severe Impairments

Withers argues that the ALJ incorrectly found that she suffers from no severe impairments. Withers asserts that her gastrointestinal condition, carpal tunnel syndrome, trigger finger, obstructive sleep apnea, depression and anxiety, hip bursitis, back pain, and obesity amount to one or more severe impairments under the standard in Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984). In support, Withers asserts that her medical records document that these conditions would limit her ability to work. The Commissioner counters that the ALJ adequately explained why Withers's conditions were not severe impairments and argues that Withers "impermissibly asks" the court to re-weigh the evidence of record. Comm'r Br. at 8, Dkt. No. 19.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans, 734 F.2d at 1014 (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509,

6

404.1520(a)(4)(ii). Withers bears the burden of proving that her impairments are severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, substantial evidence supports the ALJ's conclusion that Withers's impairments were non-severe, and indicates that the ALJ did not err by ending his inquiry at step two. Significantly, Withers has not identified any medical records or opinions that the ALJ failed to consider, but rather asks the court to reweigh the evidence, which I am not permitted to do. In his opinion, the ALJ provided a detailed history of Withers's medical treatment and testimony at the hearing. R. 25–30. He broadly concluded, "In terms of [Withers's] alleged physical and mental impairments, she had few signs on exam and had positive response to limited and conservative treatment that was mainly limited to Free Clinic and emergency room visits." R. 30. In support of this statement, the ALJ specifically addressed her impairments, and how they responded to treatment.

Regarding her carpal tunnel syndrome and trigger finger, the ALJ wrote, "The medical evidence reveals that [Withers] admitted a positive response to bracing and naproxen for CTS symptoms in June 2013." R. 30. And further,

> In March 2014, [Withers] reported positive response to cortisone shots for her right trigger finger, and she had no digit locking with negative Tinel's signs on exam, so she was assessed with a resolving trigger finger." R. 31. (…) At her July and August 2014 orthopedic visits, [Withers] was treated conservatively with instructions to exercise and walk for pain, and her trigger finger was assessed as improving.

R. 31. The ALJ specifically referenced that opinion of the state agency doctor Dr. Kadian, who found that Withers's carpal tunnel syndrome was non-severe, giving his opinion "great weight" because it was "supported by [Withers] few abnormalities on exam, positive response to limited and conservative treatment, and continued work and daily activities through the date of the decision." R. 32, 132.

7

Regarding Withers's gastrointestinal condition, the ALJ wrote, "Though she required a brief hospitalization the next month for a perforated cecum, she responded well to surgery." R. 31. The ALJ also referenced Withers's "BMI of 33.69 in October 2014" and noted that she "had normal colonoscopy results [in November 2014]." He wrote that "she was alert with normal memory and bowel sounds at her August 2015 gastroenterology visit . . . and her September 2015 endoscopy was normal." R. 31.

Regarding Withers's back and hip pain, the ALJ specifically referenced the October 2013 consultative exam, writing that she "had normal strength, gait, reflexes, sensation, coordination, grip strength, straight leg raise testing and range of motion in all extremities." R. 31. He further wrote:

> By January 2015, [Withers] had no abnormalities on exam, despite reporting spine spasms and hip pain. During her March 2015 Free Clinic visits, [Withers] was ambulatory, she had full extremity range of motion, full muscle strength, and intact sensation, so her treatment was limited to ibuprofen for myalgias, Nexium for stomach pain, and Drisdol for Vitamin D deficiency. [Withers] reported doing well and had a normal exam in April 2015, her annual check-up in July 2015 was unremarkable, and she had full extremity range of motion with no back tenderness during her Free Clinic visit later that month.

R. 31.

The ALJ also discussed Withers's mental health, noting that she "reported doing well at her June 2014 check-up; she was alert and oriented on exam; she was assessed with stable anxiety and depression; and she was prescribed medication refills for Vitamin D deficiency and mental symptoms." R. 31. He noted that Withers was "assessed with controlled anxiety and insomnia in early August 2015." R. 31. The ALJ also referenced the opinions of the state agency psychologists who found that Withers's affective disorder was a non-severe impairment, giving these opinions "great weight" because they were "consistent with the lack of mental abnormalities on the claimant's exams, her positive response to limited and conservative

8

treatment of medications as prescribed by her primary care provider, and her reported work and daily activities." R. 32.

The ALJ concluded that, "In sum, all of [Withers] medically determinable impairments, either had symptoms that did not last for 12 months or more, or they did not cause symptoms or signs on exam that would have even minimally affected [Withers] ability to carry out basic, work-related activities because they were adequately treated with conservative measures." R. 31. The ALJ also noted that Withers's "wide-range of daily activities, current work activity, and admission that she was not working full-time for her current client because of non-physical reasons, all support that her impairments did not even minimally affect her ability to carry out basic, work-related activities." R. 31. Specifically, the ALJ referred to Withers's admission at the hearing that she worked for three hours in the morning, five days a week, including assisting her client with dressing and performing light chores, and did not work a full day because of personality conflicts with her employer's relative, did her own grocery shopping, cooked meals, shopped, cared for pets and her own personal needs, attended church, and handled her finances. R. 31.

Withers simply has not met her burden of establishing that her impairments are severe, including the requirement that an impairment be expected to last for at least 12 months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Thus, the ALJ's step two analysis is supported by substantial evidence and should not be disturbed.

### C. Opinion of Dr. Jadali

Withers argues the ALJ should have afforded greater weight to Dr. Jadali's opinion that she was limited to light work. In support, Withers emphasizes that Dr. Jadali performed a physical examination as part of his consultative examination, and points to a medical record from

9

Case 6:16-cv-00034-RSB   Document 23   Filed 03/17/17   Page 9 of 13   Pageid#: 866

Lynchburg Hematology Clinic indicating that Withers should not engage in physically strenuous activity.[10]

First, the ultimate decision on whether Withers meets the statutory definition for disability is always reserved to the Commissioner, and thus Dr. Jadali's opinion on Withers's disability was entitled to no special weight. See Morgan v. Barnhart, 142 F. App'x 716, 722 (4th Cir. 2005). Further, consultative examiners such as Dr. Jadali do not constitute treating sources under the regulations, and thus their opinions generally do not warrant controlling weight. see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Carter v. Colvin, No. 1:15CV00981, 2016 WL 4487778, at *11 (M.D.N.C. Aug. 25, 2016).[11] However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ adequately discussed the findings and opinions of Dr. Jadali and explained why he did not adopt Dr. Jadali's finding that Withers was limited to light work. Regarding Dr. Jadali, the ALJ wrote:

> Though [Dr. Jadali] did not regularly treat [Withers] he had the opportunity to examine her. Still, his findings that she is limited to light work are not supported by his exam . . . which show[ed] that she had virtually no physical or mental abnormalities with full strength, range of motion, and sensation in all extremities. Therefore, [I] give[] this opinion less weight.

---

[10] This medical record is from June 2011, thus pre-dating Withers's amended onset date by 3 years. It states that Withers "looks reasonably healthy" and indicates "no physically strenuous activity, but ambulatoary and able to carry out light or sedentary work . . . ." Withers also states that Dr. Jadali had "records before him" showing that Ms. Withers's physician had prescribed hand braces and she had repeated injections for trigger finger, as well as "severe" pain. Pl.'s Br. at 16, Dkt. 17. However, the ALJ considered the hand braces, injections, and Withers's complaints of pain in his opinion; reweighing the evidence is not the function of the court. R. 26, 27, 31, 33.

[11] This is different from the treating source rule that generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment, provided that the opinion is well supported and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ( "[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

R. 32. Accordingly, the ALJ did not err in his evaluation and weighing of Dr. Jadali's consultative examination and remand is not warranted on these grounds.[12]

### D. Obtain Additional Medical Evidence

Withers argues that the ALJ should have obtained a psychological consultative examination to determine the extent that her depression and anxiety limit her ability to work, as well as x-rays of her lower back and hips. Withers emphasizes that her mental health medication has doubled and states that she "reports such severe stress that it, alone, would prevent her from maintaining full time work." Pl.'s Br. at 16. She also states that, because the record contains evidence of back and thigh pain, as well as a "positive straight leg raise at 70 degrees" and "visible knotting on her thigh," the ALJ should have ordered an X-ray or consultative examination.

Under the regulations, an ALJ has discretion in deciding whether to order a consultative examination. Bishop v. Barnhart, 78 F. App'x at 268 (4th Cir. 2003); see also 20 C.F.R. § 404.1519a. A consultative exam is only needed when the evidentiary record before the ALJ is inadequate. France v. Apfel, 87 F. Supp. 2d 484, 489 (D. Md. 2000) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)); see also 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") A consultative examination may be used to "resolve any conflicts or ambiguities within the record" or "to secure needed medical evidence the file does not contain such as clinical findings,

---

[12] Withers also argues that, had the ALJ credited Dr. Jadali's opinion limiting her to light work, she would have been disabled under grid rule 202.02. Pl.'s Br. at 17, Dkt. No. 17. However, because I find that the ALJ did not err by rejecting Dr. Jadali's opinion that Withers's is limited to light work, this argument fails.

11

laboratory tests, a diagnosis or prognosis necessary for decision." Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) quoting 20 C.F.R. § 404.1519a(b).

Here, the ALJ did not have a duty to obtain additional medical evidence because the medical records were not "inadequate" for purposes of determining whether plaintiff was disabled. See 20 C.F.R. § 416.912(e). The medical evidence contained records from the Free Clinic of Central Virginia, including Withers's treatment and medication history and mental health complaints and diagnoses, as well as the opinions of state agency doctors and psychological consultants. The ALJ recognized that Withers had a medically determinable mental impairment of depression and anxiety, and a medically determinable impairment of chronic back pain, but found these to be non-severe based on sufficient evidence. R. 24. He emphasized Withers "own reports of a wide range of daily and work activities," her "positive response to conservative treatment" and her "few signs on exam and on diagnostic image tests" as well as the opinions of the state agency psychological consultants that Withers mental impairments caused only mild restriction of activities of daily living, no difficulties in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation of extended duration. R. 33.

The ALJ's analysis shows that he considered multiple sources of psychological evidence, as well as evidence of her back and hip impairments, in reaching his decision and substantial evidence supports the ALJ's decision not to order a consultative psychological evaluation or x-rays of her back and hips.

## CONCLUSION

For the foregoing reasons, Withers's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED**

from the court's docket.

                                                  Entered: March 17, 2017

                                                  *Robert S. Ballou*

                                                  Robert S. Ballou
                                                  United States Magistrate Judge